ERIC P. ISRAEL (State Bar No. 132426)
*eisrael@dgdk.com*
AARON E. DE LEEST (State Bar No. 216832)
*adeleest@dgdk.com*
DANNING, GILL, DIAMOND & KOLLITZ, LLP
1900 Avenue of the Stars, 11th Floor
Los Angeles, California 90067-4402
Telephone:   (310) 277-0077
Facsimile:    (310) 277-5735

Attorneys for Plaintiff Jeffrey I. Golden,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:16-bk-13643-TA |
| NEZAMIDDIN FARMANFARMAIAN, aka DEEN FARMAIAN, aka NEZEM FARMANFARMAIAN aka NEZAMEDDIN FARMANFARMAIAN aka DEEN FARMAN, | Chapter 7 |
| Debtor. | |
| JEFFREY I. GOLDEN, CHAPTER 7 TRUSTEE, | Adv. No. |
| Plaintiff, | **CHAPTER 7 TRUSTEE'S COMPLAINT: (1) TO AVOID AND RECOVER POST-PETITION TRANSFERS; (2) FOR DECLARATORY RELIEF; (3) FOR TURNOVER; AND (4) FOR REVOCATION OF DISCHARGE** |
| vs. | |
| EASTON & EASTON, LLP; MARGEAUX O'BRIEN; CAROLYN FARMANFARMAIAN, aka CAROLYN FARMAN; and NEZAMIDDIN FARMANFARMAIAN, aka DEEN FARMAIAN, aka NEZEM FARMANFARMAIAN aka NEZAMEDDIN FARMANFARMAIAN aka DEEN FARMAN, | Date:    [SEE SUMMONS] Time:    [SEE SUMMONS] Ctrm.:   [SEE SUMMONS] |
| Defendants. | |

1    Plaintiff Jeffrey I. Golden, the Chapter 7 Trustee herein, alleges:

2                                **JURISDICTION**

3       1.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

4    §§ 157(b) and 1334(b).  This action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A),

5    (E), (J), (K) and (O).  This adversary proceeding is brought pursuant to 11 U.S.C. §§ 542, 549, 550

6    and 551 and Rule 7001 of the Federal Rules of Bankruptcy Procedure.  This adversary proceeding

7    arises in and/or under and/or relates to the bankruptcy case under Chapter 7 of the Bankruptcy

8    Code (the "Code") entitled *In re Nezamiddin Farmanfarmaian, aka Deen Farmaian, aka Nezem*

9    *Farmanfarmaian aka Nezameddin Farmanfarmaian aka Deen Farman,* Case No.

10   8:16-bk-13643-TA (the "Bankruptcy Case"), which is presently pending before the United States

11   Bankruptcy Court for the Central District of California, Santa Ana Division.  The Court can and

12   should enter a final judgment herein.  If and to the extent that the Court determines that it lacks

13   jurisdiction or authority to enter a final judgment, Plaintiff requests that the Court submit findings

14   of fact and conclusions of law for consideration by the District Court.

15

16                                  **PARTIES**

17      2.      Plaintiff in this adversary proceeding is Jeffrey I. Golden, the Chapter 7 trustee

18   ("Plaintiff" or the "Trustee") of the bankruptcy estate (the "Estate") of Nezamiddin

19   Farmanfarmaian, aka Deen Farmaian, aka Nezem Farmanfarmaian aka Nezameddin

20   Farmanfarmaian aka Deen Farman, the debtor in the Bankruptcy Case (the "Debtor").  Plaintiff

21   brings this adversary proceeding solely in his capacity as the Chapter 7 Trustee of the Debtor's

22   bankruptcy estate.

23      3.      The Trustee is informed and believes, and based thereon alleges, that the Debtor is

24   an individual residing within the County of Orange, State of California.

25      4.      The Trustee is informed and believes, and based thereon alleges, that Carolyn

26   Farmanfarmaian, aka Carolyn Farman ("Carolyn") is an individual residing within the County of

27   Orange, State of California.  Plaintiff is further informed and believes that Carolyn was the

28   Debtor's wife until approximately December 2016.

5.      The Trustee is informed and believes, and based thereon alleges, that Margeaux O'Brien ("O'Brien") is an individual residing within the County of Los Angeles, State of California.

6.      The Trustee is informed and believes, and based thereon alleges, that Easton & Easton, LLP ("Easton"), is a law firm that is a California limited liability partnership that transacts business within the County of Orange, State of California.

## **GENERAL ALLEGATIONS**

7.      On or about August 30, 2016 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under Chapter 7 of the Code in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Bankruptcy Court").

8.      Jeffrey I. Golden thereafter accepted appointment as the Chapter 7 trustee for the Debtor's Estate and continues to serve in that capacity for the benefit of creditors.

9.      The deadline to object to the Debtor's discharge under § 727 of the Code was extended from December 12, 2016 through and including February 13, 2017.

10.     The Debtor's schedules filed on or about the Petition Date listed as an asset of the estate a potential personal injury claim that the Debtor valued at "unknown."

11.     On September 23, 2016, the Debtor filed amended schedules that again including the potential personal injury claim as an asset of the estate.

12.     The potential claim related to a pre-petition automobile accident involving the Debtor and Justin Douglas Carsten ("Carsten") that occurred on or about August 24, 2015 (the "Claim").

13.     On or about October 5, 2015, prior to the Petition Date, the Debtor entered into a contingent fee agreement (the "Contingent Fee Agreement") with Easton for Easton to represent him with respect to the Claim.

14.     Easton's employment was never approved by the Bankruptcy Court.

15.     The Contingent Fee Agreement provided that Easton shall receive a contingent fee equal to 33 1/3% of any amount received or recovered by client in the matter at anytime up to 45

1  days before the first trial or arbitration date and a fee equal to 40% of any amounts received
2  thereafter.

3        16.    The Contingent Fee Agreement was never approved by the Bankruptcy Court.

4        17.    On or about July 26, 2017, after the Petition Date, the Debtor commenced a lawsuit
5  by filing a complaint against Carsten in Orange County Superior Court entitled *Nezamiddin*
6  *Farmanfarmaian vs. Justin Douglas Carsten*, in Orange County Superior Court, bearing Case No.
7  30-2017-00933758-CU-PA-CJC, based on the events underlying the Claim.

8        18.    The Lawsuit was filed by Easton for the Debtor without the permission or
9  knowledge of the Trustee or the Bankruptcy Court.

10        19.    Thereafter, Easton and the Debtor prosecuted the Lawsuit against Carsten and
11  pursued the Claim without the permission of the Trustee or the Bankruptcy Court, but with
12  knowledge of the Debtor's pending bankruptcy case.

13        20.    On or about March 7, 2018, the Debtor, while represented by Easton, settled the
14  Claim and Lawsuit against Carsten by entering into a written settlement agreement with Carsten
15  and Carsten's insurance company, Alliance United Insurance Company (the "Settlement
16  Agreement"). A true and correct copy of the Settlement Agreement is attached as Exhibit "1"
17  hereto. The Settlement Agreement provides for the payment of $100,000.00 (the "First Settlement
18  Amount") to Easton and the Debtor in full satisfaction of the Claim.

19        21.    Easton had knowledge of the Debtor's pending bankruptcy case when the Lawsuit
20  was settled.

21        22.    The Settlement Agreement with Carsten only resolved the claims against Carsten
22  and Alliance United Insurance Company arising out of the Claim and did not release any
23  underinsured motorist claim that the Debtor or the Estate had against the Debtor's automobile
24  insurance company arising out of the Claim (the "Underinsured Motorist Claim").

25        23.    The Settlement Agreement with Carsten was hidden from the Trustee and never
26  approved by the Bankruptcy Court.

27        24.    On or about March 12, 2018 – i.e., after the Petition Date, the Debtor purported to
28  grant O'Brien a lien on the Claim and Lawsuit in the amount of $246,120.00 (the "O'Brien Claim

1532500.3 26579                                  4

1    of Lien"). A true and correct copy of the O'Brien Claim of Lien is attached as Exhibit "2" hereto.

2        25.    The O'Brien Claim of Lien was signed by O'Brien and the Debtor and given to

3    Easton on or about March 12, 2018.

4        26.    The O'Brien Claim of Lien advised Easton that O'Brien gave $246,120.00 to the

5    Debtor to "assist in his settling of the Bankruptcy case" and instructed Easton to pay O'Brien

6    $246,120.00 from any recovery on the Claim and Lawsuit before Easton sent any funds to the

7    Debtor.

8        27.    The Trustee is informed and believes, and based thereon alleges, that the Debtor

9    may also have purported to have granted Carolyn a lien on the Claim and Lawsuit post-petition (the

10   "Carolyn Claim of Lien") and that the Carolyn Claim of Lien was also given to Easton and placed

11   in the Debtor's file.

12       28.    The O'Brien Claim of Lien and the Carolyn Claim of Lien were never approved by

13   the Bankruptcy Court.

14       29.    The Trustee is informed and believes, and based thereon alleges, that the First

15   Settlement Amount was paid to Easton and the Debtor jointly and deposited by Easton into

16   Easton's attorney-client trust account. The Debtor and Easton failed to tell the Trustee that they

17   had received the First Settlement Amount or turn the First Settlement Amount over to the Trustee.

18       30.    On or about April 5, 2018, Easton transferred, at the Debtor's instruction and

19   without the permission of the Bankruptcy Court, all $100,000.00 of the First Settlement Amount

20   from its client trust account to itself and a number of third parties, including $33,333.33 to Easton

21   and $56,669.85 to O'Brien. The balance of the First Settlement Amount in the amount of

22   $9,996.82 was disbursed by Easton to various purported medical lien claimants. A true and correct

23   copy of the April 5, 2018 letter from Easton to the Debtor enclosing the settlement statement for

24   the disbursements of the First Settlement Amount and a copy of the April 5, 2018 check from

25   Easton to O'Brien are attached, collectively, as Exhibit "3" hereto.

26       31.    The Trustee is informed and believes, and based thereon alleges, that at some point

27   between April 5, 2018 and May 18, 2018 (i.e., post-petition), the Debtor, while represented by

28   Easton, settled the Estate's remaining Underinsured Motorist Claim against the Debtor's insurance

1   company, arising out of the Claim, for $400,000.00 (the "Second Settlement Amount").

2        32.     The settlement between the Debtor and the Debtor's insurance company was never

3   approved by the Bankruptcy Court.

4        33.     The Trustee is informed and believes, and based thereon alleges, that the Second

5   Settlement Amount was, again, paid to Easton and the Debtor jointly and deposited by Easton into

6   Easton's attorney-client trust account. The Debtor and Easton did not tell the Trustee that they had

7   received the Second Settlement Amount or turn the Second Settlement Amount over to the Trustee.

8        34.     The Trustee is informed and believes, and based thereon alleges, that on or about

9   May 17, 2018, Easton transferred, at the Debtor's instruction and without the permission of the

10   Bankruptcy Court, all $400,000.00 of the Second Settlement Amount from its client trust account

11   to itself and a number of third parties, including $144,808.15 to Easton, $190,000.00 to O'Brien,

12   and $5,191.85 to Carolyn. The balance of the Second Settlement Amount in the amount of $60,000

13   was disbursed by Easton to two purported medical lien claimants. A true and correct copy of the

14   May 18, 2018 letter from Easton to the Debtor enclosing the settlement statement for the

15   disbursements of the Second Settlement Amount and a copy of the May 17, 2018 checks from

16   Easton to Easton, O'Brien, and Carolyn are attached, collectively, as Exhibit "4" hereto.

17        35.     The transfers of the First Settlement Amount and the Second Settlement Amount

18   totaling $500,000.00 are collectively referred to herein as the "Subject Transfers."

19        36.     On July 31, 2018, not yet knowing of the existence of the Lawsuit, the Trustee,

20   though his counsel, sent an email to Travis Easton of Easton requesting that Easton provide the

21   Trustee with the status (and outcome, if any), of the Claim, and any lawsuit that Easton may have

22   filed on behalf of the Debtor. Easton failed to respond.

23        37.     On September 10, 2018, the Trustee, though his counsel, sent a further email to

24   Easton requesting a response. However, Easton, again, failed to respond.

25        38.     Thereafter, the Trustee independently learned that Easton had in fact filed the

26   Lawsuit on behalf of the Debtor on July 26, 2017 (i.e., post-petition), that the Lawsuit had settled

27   on or about January 29, 2018 (i.e., post-petition), and that on or about March 22, 2018, the Lawsuit

28   had been dismissed with prejudice by the Debtor and Easton.

39.    After discovering that that the Lawsuit had been filed, settled and dismissed, on or about October 1, 2018, the Trustee, though his counsel, sent an email to the Debtor's bankruptcy counsel, Jerrod Nakano, and his law firm, McFarlin LLP (jointly and severally, "McFarlin"), advising McFarlin of the results of the Trustee's investigation. The Trustee requested turnover of the settlement documents and any proceeds, an accounting thereof and made a demand for turnover of any settlement proceeds to the Trustee forthwith. The Trustee did not receive any response to the October 1, 2018 email and on October 22, 2018, sent another email demand though his counsel. The Trustee never received a response to either the October 1, 2018 email or the October 22, 2018 email from the Debtor or McFarlin.

40.    On December 20, 2018, the Trustee filed his Motion for Order Compelling Debtor and Debtor's Attorneys to Turn Over Property of the Estate (the "Turnover Motion"). The Turnover Motion specifically sought an order directing the Debtor and Easton turn over: (1) a copy of any settlement agreement reached in the Lawsuit for the Debtor's Claim; (2) any settlement proceeds received by the Debtor or Easton in connection with the Lawsuit; and (3) a full accounting of the settlement proceeds.

41.    On January 8, 2019, Travis Easton of Easton sent an email to the Trustee's counsel advising that "While we feel that Mr. Farman's bodily injury settlement documentation is protected under attorney client and attorney work product privileges, we have nonetheless forwarded all of Mr. Farman's settlement documentation to Mr. Farman's bankruptcy attorney, Jarrod Nakano, at our client's request. Please speak with Mr. Nakano regarding the requested information to McFarlin." Thereafter, on January 8, 2019, McFarlan sent various documents to the Trustee's counsel including copies of the Settlement Agreement, O'Brien Claim of Lien, settlement statements, and checks (reflected as Exhibits "1," "2," "3," and "4") to the Trustee.

42.    On February 11, 2019, the Court entered an order granting the Turnover Motion and directing the Debtor and Easton to turn over to the Trustee: (1) a copy of any settlement agreement reached in the Lawsuit for the Debtor's Claim; (2) any settlement proceeds received by the Debtor or Easton in connection with the Lawsuit; and (3) a full accounting of the settlement proceeds.

43.    To date, none of the settlement proceeds (i.e., the First Settlement Amount and the

1  Second Settlement Amount) have been turned over to the Trustee by the Debtor or Easton. Rather,

2  as alleged above, the settlement proceeds were transferred at the Debtor's instruction to Easton,

3  O'Brien, and Carolyn and other third-parties.

4      44.    Easton's employment as the Debtor's counsel was never approved by the

5  Bankruptcy Court.

6      45.    The Trustee is informed and believes, and based thereon alleges, that the Debtor,

7  Carolyn, O'Brien, and Easton all acted in concert with each other to conceal the disposition and

8  settlement of the litigation from the Trustee.

9      46.    The Trustee is informed and believes, and based thereon alleges, that the Debtor

10  knowingly and fraudulently failed to report his acquisition or entitlement to the First Settlement

11  Amount and the Second Settlement Amount or to deliver or surrender the First Settlement Amount

12  and the Second Settlement Amount to the Trustee.

13      47.    The Debtor had a duty under 11 U.S.C. § 521(4) to surrender to the Trustee the First

14  Settlement Amount and the Second Settlement Amount.

15

16      **FIRST CLAIM FOR RELIEF**

17      **(Avoidance and Recovery of Post-Petition Transfers**

18      **Under 11 U.S.C. § 549)**

19      **(Against the Debtor, Easton, O'Brien and Carolyn)**

20      48.    The Trustee refers to and incorporates herein by reference each and every allegation

21  contained in paragraphs 1 through 47, inclusive, of this Complaint as though fully set forth herein.

22      49.    The Subject Transfers were not authorized under the Bankruptcy Code or by the

23  Court.

24      50.    Pursuant to § 549 of the Code, the Trustee is entitled to avoid the Subject Transfers.

25      51.    Pursuant to the provisions of § 550 of the Bankruptcy Code, the Trustee may

26  recover the property transferred under the Subject Transfers or the value thereof from the Debtor,

27  Easton, O'Brien and Carolyn in an amount to be proven at trial, plus interest thereon at the legal

28  rate.

## SECOND CLAIM FOR RELIEF

### (Avoidance and Recovery of Post-Petition Transfers

### Under 11 U.S.C. § 549)

### (Against O'Brien and Carolyn)

52.     The Trustee refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 47, inclusive, of this Complaint as though fully set forth herein.

53.     The O'Brien Claim of Lien and the Carolyn Claim of Lien were not authorized under the Bankruptcy Code or by the Court.

54.     Pursuant to § 549 of the Code, the Trustee is entitled to avoid the O'Brien Claim of Lien and the Carolyn Claim of Lien.

55.     Pursuant to the provisions of the § 551 of the Bankruptcy Code, the O'Brien Claim of Lien and the Carolyn Claim of Lien are preserved for the benefit of the Estate.

## THIRD CLAIM FOR RELIEF

### (For Declaratory Relief, Violation of the

### Automatic Stay Under 11 U.S.C. § 362(a))

### (Against the Debtor, Easton, O'Brien and Carolyn)

56.     The Trustee refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 47, inclusive, of this Complaint as though fully set forth herein.

57.     An actual dispute exists between the Trustee, on the one hand, and the Debtor, Easton, O'Brien and Carolyn, on the other hand, in that the Trustee believes that all of the post-petition acts of the Debtor, Easton, O'Brien and Carolyn to obtain possession of property of the Estate, as alleged herein, including, without limitation, the Subject Transfers, and their acts to create, perfect, or enforce a lien against property of the Estate, including the O'Brien Claim of Lien and the Carolyn Claim of Lien, as alleged herein, are void as violations of the automatic stay.

58.     The Trustee is entitled to a judgment declaring that the post-petition acts of the Debtor, Easton, O'Brien and Carolyn, as alleged herein, including the Subject Transfers and the O'Brien Claim of Lien and the Carolyn Claim of Lien are void as violations of the automatic stay.

## FOURTH CLAIM FOR RELIEF

### (For Turnover Under 11 U.S.C. § 542)

### (Against the Debtor, Easton, O'Brien and Carolyn)

59.    The Trustee refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 47, inclusive, of this Complaint as though fully set forth herein.

60.    The Debtor, Easton, O'Brien and Carolyn are in possession of property of the Estate in the form of the Subject Transfers.

61.    The Trustee may use, sell or lease the property transferred under the Subject Transfers for the benefit of the Estate and its creditors.

62.    Pursuant to the provisions of § 542 of the Code, and other applicable laws, the Trustee is entitled to turnover of the property transferred under the Subject Transfers from the Debtor, Easton, O'Brien and Carolyn, plus interest thereon at the legal rate.

## FIFTH CLAIM FOR RELIEF

### (To Revoke Discharge 11 U.S.C. § 727(d)(2))

### (Against the Debtor)

63.    The Trustee refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 62, inclusive, of this Complaint as though fully set forth herein.

64.    After the Petition Date, the Debtor acquired the First Settlement Payment and the Second Settlement Payment, which assets are property of the estate.

65.    Pursuant to the provisions of 11 U.S.C. § 727(d)(2), the Debtor failed to deliver or surrender the First Settlement Amount and the Second Settlement Amount to the Trustee and instead transferred the funds thereunder post-petition to Easton, O'Brien and Carolyn, among others, without Court approval.

66.    In doing so, the Debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the Trustee.

1   67.    By reason of the Debtor's failure to deliver or surrender the First Settlement

2   Amount and the Second Settlement Amount to the Trustee, the Debtor acquired property that is

3   property of the estate, or became entitled to acquire property that would be property of the estate,

4   and knowingly and fraudulently failed to report the acquisition of or entitlement to such property,

5   or to deliver or surrender such property to the Trustee and the Debtor's discharge should be

6   revoked under 11 U.S.C. § 727(d)(2).

7

8                          **SIXTH CLAIM FOR RELIEF**

9                     **(To Revoke Discharge 11 U.S.C. § 727(d)(3))**

10                            **(Against the Debtor)**

11   68.    The Trustee refers to and incorporates herein by reference each and every allegation

12   contained in paragraphs 1 through 67, inclusive, of this Complaint as though fully set forth herein.

13   69.    Pursuant to the provisions of 11 U.S.C. § 727(d)(3), the Debtor has committed an

14   act specified in § 727(a)(6) wherein he has failed to obey the Turnover Order, an order of this Court

15   entered on February 11, 2019, including, without limitation, by failing to comply with the order by

16   delivering to the Trustee all of the settlement proceeds received in connection with the Lawsuit.

17   70.    By reason of the Debtor's failure to comply with an order of this Court, the Debtor's

18   discharge should be revoked.

19

20   WHEREFORE, the Trustee prays for judgment against the defendants as follows:

21   ON THE FIRST CLAIM FOR RELIEF:

22   1.    For judgment in favor of the Trustee and against the Debtor, Easton, O'Brien and

23   Carolyn avoiding the Subject Transfers;

24   2.    For a judgment in favor of the Trustee for the value of the Subject Transfers in the

25   amount of $500,000.00 against the Debtor, Easton, O'Brien and Carolyn, jointly and severally; and

26   3.    For an award of interest at the legal rate on all sums awarded to the Trustee from

27   and after the date of the Subject Transfers.

28   ///

ON THE SECOND CLAIM FOR RELIEF:

      1.      For judgment in favor of the Trustee and against O'Brien and Carolyn avoiding the O'Brien Lien Claim and the Carolyn Lien Claim;

      2.      For a judgment in favor of the Trustee preserving the O'Brien Lien Claim and the Carolyn Lien Claim for the benefit of the Estate.

ON THE THIRD CLAIM FOR RELIEF:

      1.      For a declaratory judgment that the post-petition acts of the Debtor, Easton, O'Brien and Carolyn, in relation to the Claim and Lawsuit, including the Subject Transfers and the O'Brien Claim of Lien and the Carolyn Claim of Lien, are void as a violation of the automatic stay.

ON THE FOURTH CLAIM FOR RELIEF:

      1.      For a judgment directing the Debtor, Easton, O'Brien and Carolyn to turn over the Subject Transfers to the Trustee and for judgment in the amount of $500,000.00, jointly and severally, plus interest thereon as provided by law.

ON THE FIFTH AND SIXTH CLAIMS FOR RELIEF:

      1.      For revocation of the Debtor's discharge.

ON ALL CLAIMS FOR RELIEF:

      1.      For costs of suit incurred herein; and

      2.      For all other and further relief as the Court deems just and proper.

DATED: March 1?, 2019          DANNING, GILL, DIAMOND & KOLLITZ, LLP

                                      By: _____
                                        AARON E. DE LEEST
                                        Attorneys for Plaintiff Jeffrey I. Golden,
                                        Chapter Trustee

EXHIBIT 1

Claim # 271518

## SETTLEMENT AGREEMENT AND RELEASE

In consideration and upon delivery to the undersigned, or his/her representative, of a check or draft in the sum of ONE HUNDRED THOUSAND Dollars and 00/100 Cents ($100,000.00) payable as follows: Easton & Easton, LLP and Nezamiddin Farmanfarmaian, I/we NEZAMIDDIN FARMANFARMAIAN (hereafter "Releasors," whether in reference to the singular or plural) do forever release, discharge and covenant to hold harmless JUSTIN DOUGLAS CARSTEN and ALLIANCE UNITED INSURANCE COMPANY, and their agents, representatives, heirs, executors, successors and assigns (collectively, the "Released Parties") of and from any and all actions, causes of action, claims, demands, damages, costs, and expenses due to personal injuries allegedly sustained or in any way arising out of that certain motor vehicle accident occurring on or about August 24, 2015 at or near S Coast Hwy (SR-1) and Legion St., City of Laguna Beach, County of Orange, State of California (this "Agreement"). As used herein, "Releasors" is intended to apply in the singular or plural, as may be applicable.

Upon receipt of payment hereunder, Releasors will promptly cause to be filed with the Clerk of the Court. a Request for Dismissal with Prejudice of any suit that may have been filed in connection with this claim, and will promptly provide a conformed copy of same to Alliance United Insurance Company.

Releasors hereby agree that should any outstanding liens exist against the proceeds of this settlement in addition to any lien payees named herein above, Releasors are wholly responsible for their satisfaction. Releasors agree to indemnify, hold harmless and defend said Released Parties from and against any such liens.

Releasors further hereby declare that, no representations about the nature and extent of the said injuries, disabilities or damages made by any physician, attorney or agent of the Released Parties, or any representations regarding the nature and extent of legal liability or financial responsibility of the Released Parties, have induced the undersigned to enter into this Agreement; that in determining the amount of the said sum there has been taken into consideration the possibility that the injuries sustained may be permanent and progressive, recovery therefrom uncertain and indefinite, and consequences not now anticipated may result from said accident.

The undersigned agree, as a further consideration and inducement for this Agreement, that it shall apply to all unknown and unanticipated injuries and damages directly and indirectly resulting from said accident, as well as those now disclosed, and that said payment is made in full satisfaction of all claims that the undersigned have heretofore asserted or might personally or through personal representatives hereafter assert against the Released Parties as a result of the above-referenced incident.

It is understood and agreed that, the undersigned hereby expressly waive all rights under California Civil Code section 1542 which provides, "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

It is further understood and agreed that this Agreement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of the Released Parties, by whom liability is expressly denied.

This Agreement contains the entire agreement between the parties hereto, and the terms of this agreement are contractual and not a mere recital. This Agreement pertains to bodily injury claims only and does not encompass damage to property.

I attest that, I have read the foregoing Agreement and know the contents thereof, I have signed the same of my own free will, and this Agreement was not signed under duress

SIGNATURE_____ DATE: 3-7-18

PRINTED NAME Nezam Faram Farmaian.

SIGNATURE_____ DATE:_____

PRINTED NAME_____

FOR YOUR PROTECTION CALIFORNIA LAW REQUIRES THE FOLLOWING TO APPEAR ON THIS FORM: ANY PERSON WHO KNOWINGLY PRESENTS FALSE OR FRAUDULENT CLAIM FOR THE PAYMENT OF A LOSS IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN STATE PRISON (Cal. Ins. Code §1871.2)

PARA SU PROTECCIÓN, LA LEY DE CALIFORNIA REQUIERE QUE LO SIGUIENTE APAREZCA INCLUIDO EN ESTA FORMA: CUALQUIER PERSONA, QUE BAJO SU CONOCIMIENTO, PRESENTE UN RECLAMO FALSO O FRAUDULENTO PARA RECIBIR PAGO POR UNA PERDIDA ES CULPABLE DE UN CRIMEN Y PUEDE SER SUJETO A UNA MULTA Y ENCARCELAMIENTO.

*THIS IS A POLICY LIMITS OFFER AND DOES NOT RELEASE ANY UNDERINSURED MOTORIST BENEFITS

013    EXHIBIT    1

## *ADDENDUM TO:
### SETTLEMENT AGREEMENT AND RELEASE FOR

The settlement amount referred to herein is being paid to claimant on account of claims made by claimant for personal physical injury arising out of the accident or incident being released.

This release does not limit, alter, modify or affect in any way any possible underinsured claims by Deen Farnan under any policies of insurance he may have with her own automobile insurance company, which may entitle her to additional and/or underinsured motorist benefits.

EXHIBIT 2

## CLAIM OF LIEN

Notice is hereby given that on February 1st, 2018.

| | |
|---|---|
| The Claimant: | Margeaux O'Brien AKA Margeaux O'Brien |
| Located at: | 4614 Mirador Place |
| | Tarzana, CA 91356 |

Margeaux O'Brien gave $246,120.00 to Dean Farman to assist in his settling of the Bankruptcy case.

Dean Farman hereby grants to Margeaux O'Brien a lien on his personal injury case arising out of the automobile accident of 8/24/2015.

The amount of $246,120.00

I, Dean Farman, do hereby instruct my attorneys, Easton and Easton,  to pay $246,120.000 to Margeaux O'Brien out of any recovery I obtain from the 8/24/1015 settlement before any funds are sent to me.

Date: 3-12-18

_____
Signature of Lien Claimant, Margeaux O'Brien

Date: 3-12-18 -

_____
Signature of Dean Farman

EXHIBIT

2

EXHIBIT 3



W. DOUGLAS EASTON
BRIAN W. EASTON
MATTHEW D. EASTON*
TRAVIS R. EASTON
GABRIEL M. MENDOZA

EASTON & EASTON
A PERSONAL INJURY LAW FIRM

650 TOWN CENTER DRIVE
SUITE 1850
COSTA MESA, CALIFORNIA 92626

TELEPHONE (714) 850-4590
FACSIMILE (714) 850-1978
EMAIL info@eastonlawfirm.com
WEBSITE www.eastonlawfirm.com

deaston@eastonlawfirm.com
beaston@eastonlawfirm.com
mdeaston@eastonlawfirm.com
teaston@eastonlawfirm.com
gmendoza@eastonlawfirm.com

* Adjunct Professor of Trial Technology
Whittier Law School

April 5, 2018

Deen Farman
29841 Stordahl Circle
Laguna Niguel, CA  92677

Re:  Farman v. Carsten

Dear Deen:

The settlement draft has cleared and I am enclosing with this letter a settlement statement setting forth the settlement proceeds and the various disbursements that have been made from your action.  Also enclosed is my trust account check made payable to Margeaux O'Brien in the sum of $56,669.85 pursuant to your instructions.

It has been a pleasure to assist you in this case.  I trust that you have been satisfied with the services rendered.  If you have any questions, please feel free to contact me.

Very truly yours,

EASTON & EASTON, LLP

TRAVIS R. EASTON

TREE/re
Enclosures

016        EXHIBIT        3



## SETTLEMENT STATEMENT

Re:  **Farman v. Carsten**

| | |
|---|---:|
| TOTAL SETTLEMENT: | 100,000.00 |
| LESS ATTORNEY'S FEES (33 1/3 %): | 33,333.33 |
| GROSS SHARE OF SETTLEMENT: | 66,666.67 |
| | |
| **LESS LIENS:** | |
| MNet Financial, Inc. / Invision Newport Beach | 46.82 |
| Sonny J. Rubin, M.D. / Orange County Pain Specialist* | 1,500.00 |
| University Imaging Centers* | 2,050.00 |
| Open Advantage MRI* | 2,400.00 |
| Coast 2 Coast for Orange County Diagnostics* | 4,000.00 |
| Alison Read, RNFA   (To Be Paid From UIM Proceeds  -  $10,000) ** | 0.00 |
| Thomas J. Hopkins, M.D.  (To Be Paid From UIM Proceeds - $50,000) ** | 0.00 |
| | |
| NET SETTLEMENT PROCEEDS TO CLIENT: | 56,669.85 |

\*      **We were able to reduce the following lien balances and have credited the savings to your share of the settlement.**

\*\*     **These lien balances will be paid from the UIM Proceeds**

| LIEN CLAIMANT | LIEN AMT | AMT PAID |
|---|---:|---:|
| Sonny J. Rubin, M.D. / Orange County Pain Specialist | 2,750.00 | 1,500.00 |
| University Imaging Centers | 6,150.00 | 2,050.00 |
| Open Advantage MRI | 9,400.00 | 2,400.00 |
| Coast 2 Coast for Orange County Diagnostics | 13,720.43 | 4,000.00 |
| **LIEN CLAIMANT** | **LIEN AMT** | **AMT NEGOTIATED** |
| Alison Read, RNFA  (To Be Paid From UIM Proceeds) | 25,410.00 | 10,000.00 |
| Thomas J. Hopkins, M.D. (To Be Paid From UIM Proceeds) | 115,750.00 | 50,000.00 |

12753

**EASTON & EASTON, L.**
TRUST ACCOUNT
650 TOWN CENTER DR., STE 1850
COSTA MESA, CA 92626-5941
(714) 860-4590

JPMORGAN CHASE BANK, NA
SANTA ANA, CA 92704
90-7182/3222

04/05/18

PAY TO THE
ORDER OF   Margeaux O'Brien                                          $ **56,669.85

Fifty-Six Thousand Six Hundred Sixty-Nine and 85/100*********************************************** DOLLARS

▲ PROTECTED AGAINST FRAUD ▲

Margeaux O'Brien

MEMO   Farman v. Carsten

⑈042753⑈ ⑆322271627⑆     7103678666⑈

---

| EASTON & EASTON, LLP | | | 12753 |
|---|---|---|---|
| Margeaux O'Brien | | 04/05/18 | |
| | Net Settlement Proceeds | | 56,669.85 |

Chase Trust Account       Farman v. Carsten          56,669.85

| EASTON & EASTON, LLP | | | 12753 |
|---|---|---|---|
| Margeaux O'Brien | | 04/05/18 | |
| | Net Settlement Proceeds | | 56,669.85 |

Chase Trust Account       Farman v. Carsten          56,669.85

PAYMENT RECORD

018

EXHIBIT 4



W. DOUGLAS EASTON
BRIAN W. EASTON
MATTHEW D. EASTON*
TRAVIS R. EASTON
GABRIEL M. MENDOZA

* Adjunct Professor of Trial Technology
Whittier Law School

# EASTON & EASTON
### A FAMILY OF PERSONAL INJURY ATTORNEYS

650 TOWN CENTER DRIVE
SUITE 1850
COSTA MESA, CALIFORNIA 92626

TELEPHONE (714) 850-4590
FACSIMILE (714) 850-1978
EMAIL info@eastonlawfirm.com
WEBSITE www.eastonlawfirm.com

deaston@eastonlawfirm.com
beaston@eastonlawfirm.com
mdeaston@eastonlawfirm.com
teaston@eastonlawfirm.com
gmendoza@eastonlawfirm.com

May 18, 2018

Deen Farman
29841 Stordahl Circle
Laguna Niguel, CA 92677

Re: Farman vs. Carsten, et al.

Dear Deen:

This will confirm the conversation we had on May 18, 2018. During this conversation we discussed the fact that Margeaux O'Brien and Carolyn Farmanfarmaian had loaned you money in connection with your life and bankruptcy during the pending lawsuit. In addition, you had provided Margeaux O'Brien and Carolyn Farmanfarmaian liens against your case. As discussed in our conversation, you do not want us to distribute any of your settlement for either the third-party case or your underinsured motorist claim to yourself. What you would rather have is Easton & Easton issue the checks directly payable to Margeaux O'Brien and Carolyn Farmanfarmaian in reimbursement of their liens that have been placed on your file.

As you are aware, any money that would be paid directly to you is not going to be taxable, but any money that goes to Margeaux O'Brien and Carolyn Farmanfarmaian may indeed be taxable to them. As discussed in our conversation this is how you want to handle the disbursement of your third-party and underinsured motorist claims.

With your desires, I will have the checks made payable to Margeaux O'Brien and Carolyn Farmanfarmaian and you are coming into my office to pick up the checks.

If this is not a true and accurate reflection of our conversation, please let me know and will have the checks made payable directly to you.

Very truly yours,

EASTON & EASTON, LLP

BRIAN W. EASTON



**EASTON & EASTON**
A PERSONAL INJURY LAW FIRM

## SETTLEMENT STATEMENT

**Re:  Farman re UIM**

| | |
|---|---:|
| **TOTAL SETTLEMENT:** | **400,000.00** |
| **LESS ATTORNEY'S FEES (33 1/3 %):** | **133,333.32** |
| **GROSS SHARE OF SETTLEMENT:** | **266,666.68** |
| **LESS COSTS:** | |
| Filing Fee:<br>       Complaint | 435.00 |
| Service of Summons & Complaint on Justin Carsten | 103.90 |
| Publication re Summons | 189.00 |
| Jury Fees | 150.00 |
| Skip Trace on Justin Carsten | 85.00 |
| Entity Search & Report re Declaration of Non-Service | 115.00 |
| E-File Fees | 125.40 |
| Records from:<br>       Advance Orthopaedic Specialists of OC<br>       Cheryl L. Kellogg MD<br>       Vincent Duda, MD<br>       Newport Medical Solutions<br>       CHOC @ Mission<br>       Patricia McHone, DC<br>       Providence Saint John's Health Center<br>       Mission Hospital<br>       Laguna Orthopedic Rehabilitation | 67.36<br>139.77<br>53.42<br>72.20<br>85.31<br>82.24<br>398.87<br>74.64<br>15.00 |
| Policy Limits Research | 300.00 |
| Illustrations | 720.00 |
| Review & Summary of Medical Records | 3,100.00 |
| Retainer for Life Care Plan | 5,000.00 |
| Parking re CMC for Farman | 4.00 |
| Photocopying | 145.40 |
| Postage | 13.32 |
| **TOTAL COSTS ADVANCED** | **11,474.83** |



EASTON & EASTON
A PERSONAL INJURY LAW FIRM

| LESS LIENS: | |
|---|---|
| Sonny J. Rubin, M.D. / Orange County Pain Specialist* | PAID |
| University Imaging Centers* | PAID |
| Open Advantage MRI* | PAID |
| Coast 2 Coast for Orange County Diagnostics* | PAID |
| Alison Read, RNFA | 10,000.00 |
| Thomas J. Hopkins, M.D. | 50,000.00 |
| NET SETTLEMENT PROCEEDS TO CLIENT: | 195,191.85 |

We were able to reduce the following lien balances and have credited the savings
to your share of the settlement.

| LIEN CLAIMANT | LIEN AMT | AMT PAID |
|---|---|---|
| Alison Read, RNFA | 25,410.00 | 10,000.00 |
| Thomas J. Hopkins, M.D. | 115,750.00 | 50,000.00 |

021

**EASTON & EASTON, LLP**
TRUST ACCOUNT
650 TOWN CENTER DR., STE1850
COSTA MESA, CA 92626-6041
(714) 650-4560

JPMORGAN CHASE BANK, NA
SANTA ANA, CA 92704
90-7182/3222

13010

06/18/18

PAY TO THE
ORDER OF    Easton & Easton, LLP                                                      $ **144,808.15

One Hundred Forty–Four Thousand Eight Hundred Eight and 15/100******************************* DOLLARS

    8 PROTECTED AGAINST FRAUD 8

Easton & Easton, LLP
650 Town Center Dr., Suite 1850
Costa Mesa, CA 92626



MEMO    Farman, Deen

⑈0ʼ3010ⁿ  ⑈3222718270⑈      7423678660ⁿ

**EASTON & EASTON, LLP**                                                             13010
    Easton & Easton, LLP                                  06/18/18

                                Attorney Fees                            133,333.32
                                Attorney Costs                            11,474.83

Chase Trust Account        Farman, Deen                        144,808.15

**EASTON & EASTON, LLP**                                                             13010
    Easton & Easton, LLP                                  06/18/18

                                Attorney Fees                            133,333.32
                                Attorney Costs                            11,474.83

PAYMENT RECORD

Chase Trust Account        Farman, Deen        022              144,808.15

**EASTON & EASTON LP**
TRUST ACCOUNT
650 TOWN CENTER DR., STE 1850
COSTA MESA, CA 92626-6041
(714) 860-4590

JPMORGAN CHASE BANK, NA
SANTA ANA, CA 92704
90-7162/3222

12908

05/17/18

PAY TO THE
ORDER OF _____ Margeaux O'Brien _____ $ **190,000.00

One Hundred Ninety Thousand and 00/100******************************************************************** DOLLARS

Margeaux O'Brien
4614 Mirador Place
Tarzana, CA 91356



MEMO  Farman re UIM

"012908"  :322271627:  712367866"

---

EASTON & EASTON, LLP                                                     12908

Margeaux O'Brien

                              Net Settlement Proceeds        05/17/18

                                                                190,000.00

---

Chase Trust Account        Farman re UIM              190,000.00

EASTON & EASTON, LLP                                                     12908

Margeaux O'Brien

                              Net Settlement Proceeds        05/17/18

                                                                190,000.00

PAYMENT RECORD

Chase Trust Account        Farman re UIM        023        190,000.00

48009 (3/17)        100791

12909



**EASTON & EASTON**   P
TRUST ACCOUNT
650 TOWN CENTER DR, STE 1850
COSTA MESA, CA 92626-6041
(714) 850-4590

JPMORGAN C  SE BANK, NA
SANTA A    CA 92704
90-7162/3222

05/17/18

PAY TO THE
ORDER OF    Carolyn Farmanfarmaian

$ **5,191.85

Five Thousand One Hundred Ninety-One and 85/100****************************************************** DOLLARS

□ PROTECTED AGAINST FRAUD □

Carolyn Farmanfarmaian
29841 Stordahl Circle
Laguna Niguel, CA 92677

MEMO   Farman re UIM

⑉012909⑉ ⑊322271627⑊    712367866⑉

---

EASTON & EASTON, LLP                                          12909

   Carolyn Farmanfarmaian                    05/17/18

                     Balance of Net Settlement Proceeds              5,191.85

Chase Trust Account        Farman re UIM                      5,191.85

EASTON & EASTON, LLP                                          12909

   Carolyn Farmanfarmaian                    05/17/18

                     Balance of Net Settlement Proceeds              5,191.85

PAYMENT RECORD

Chase Trust Account        Farman re UIM         024          5,191.85


100791

Rev 2/14

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>JEFFREY I. GOLDEN, CHAPTER 7 TRUSTEE | DEFENDANTS<br>EASTON & EASTON, LLP; MARGEAUX O'BRIEN; CAROLYN FARMANFARMAIAN, aka CAROLYN FARMAN; and NEZAMIDDIN FARMANFARMAIAN, aka DEEN FARMAIAN |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>AARON E. DE LEEST (State Bar No. 216832)<br>DANNING, GILL, DIAMOND & KOLLITZ, LLP<br>1900 Avenue of the Stars, 11th Floor, Los Angeles, CA 90067<br>(310) 277-0077 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Avoid and recover post-petition transfers 11 U.S.C. Section 549; Declaratory relief 11 U.S.C. Section 362; Turnover 11 U.S.C. Section 542; Revocation of discharge 11 U.S.C. Section 727(d)(2) and (3)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☑ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☑ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☑ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☑ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 500,000.00 |
| Other Relief Sought    None | |

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR    NEZAMIDDIN FARMANFARMAIAN | BANKRUPTCY CASE NO.    8:16-bk-13643-TA | |
| DISTRICT IN WHICH CASE IS PENDING    CENTRAL DISTRICT OF CALIFORNIA | DIVISION OFFICE    SANTA ANA | NAME OF JUDGE    HON. THEODORE ALBERT |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE    MARCH 18, 2019 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)    AARON E. DE LEEST | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.